IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAKOTA LONE WOLF,                    )
                                     )      Civil No. 02-804-JE
          Petitioner,                )
                                     )
     v.                              )
                                     )
R.O. LAMPERT,                        )
                                     )      FINDINGS AND RECOMMENDATION
          Respondent.                )

     Lisa C. Hay
     Assistant Federal Public Defender
     101 S.W. Main Street, Suite 1700
     Portland, Oregon 97204

          Attorney for Petitioner

     Hardy Myers
     Attorney General
     Lester R. Huntsinger
     Senior Assistant Attorney General
     Department of Justice
     1162 Court Street NE
     Salem, Oregon 97301

          Attorneys for Respondent

///

     1 - FINDINGS AND RECOMMENDATION

JELDERKS, Magistrate Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254 in which he challenges his underlying state convictions for Felon in Possession of a Firearm, Unlawful Possession of a Controlled Substance, Unlawful Delivery of a Controlled Substance, and Assault. For the reasons set forth below, the Petition for Writ of Habeas Corpus (#1) should be denied, and Judgment should be entered dismissing this action with prejudice.

## BACKGROUND

On May 22, 1995, the Lane County Grand Jury returned an indictment charging petitioner with one count each of Unlawful Possession of a Machine Gun, Felon in Possession of a Firearm, and Unlawful Possession of a Controlled Substance (Case No. 10-95-04802). Respondent's Exhibit 103, pp. 1-2. Subsequently, in June 1995, the Lane County Grand Jury returned a second indictment charging petitioner with two counts each of Unlawful Possession of a Controlled Substance and Unlawful Delivery of a Controlled Substance and one count each of Unlawful Possession of a Short-Barreled Shotgun and Felon in Possession of a Firearm (Case No. 10-95-05480A). Respondent's Exhibit 103, pp. 3-5. Finally, in December 1995, the Lane County Grand Jury returned a third indictment charging petitioner with second-degree assault (Case No. 10-95-11914). Respondent's Exhibit 103, p. 6.

All three cases were consolidated for trial and a jury found petitioner guilty of two counts each of Felon in Possession of a Firearm and Unlawful Possession of a Controlled Substance, one count of Unlawful Delivery of a Controlled Substance, and one count of Assault in the Fourth Degree.[1]  The court imposed a series of consecutive sentences on those convictions totaling 123 months. Respondent's Exhibit 101.

Petitioner directly appealed his sentence, but the Oregon Court of Appeals affirmed from the bench, and the Oregon Supreme Court denied review. State v. Lonewolf, 154 Or. App. 194, 960 P.2d 395 (1998), rev. denied 327 Or. 448, 964 P.2d 1030 (1998).

Petitioner next filed for post-conviction relief ("PCR") in state court.  The PCR trial court denied relief.  Respondent's Exhibit 110.  The Oregon Court of Appeals affirmed the PCR trial court without a written opinion, and the Oregon Supreme Court denied review. Lonewolf v. Lampert, 178 Or. App. 319, 37 P.3d 259 (2001), rev. denied 334 Or. 121, 47 P.3d 484 (2002).

On June 17, 2002, petitioner filed this action.  Petitioner's grounds for relief as set forth in his Petition can be characterized as follows:

    1.   Petitioner's conviction was based on evidence obtained through a coerced confession of him while he was high on drugs and alcohol, and was suffering from hallucinations and mental illness;

---

[1]    The State dropped the unlawful possession of a machine gun and short-barreled shotgun charges at trial.

2.    Petitioner's conviction was based on evidence obtained through an unconstitutional search and seizure;

3.    Petitioner's conviction was based on evidence obtained though an illegal search and arrest;

4.    Petitioner's conviction was obtained by a violation of the right against self-incrimination;

5.    Petitioner's conviction was obtained by prosecutorial misconduct;

6.    Petitioner was denied effective assistance of counsel because he was forced to go to trial without full representation and made to represent himself; and

7.    Petitioner's conviction was obtained by action of a jury that was unconstitutionally selected and impaneled.

Respondent asks the court to deny relief on the Petition because: (1) petitioner's Grounds One through Five and Seven were not traversed in petitioner's supporting memorandum and are therefore waived; (2) Ground Six was not fairly presented to the state courts and is now procedurally defaulted; (3) the state court findings are entitled to deference; and (4) all claims lack merit.

## DISCUSSION

### I.    Unargued Claims.

Grounds One through Five and Seven involve claims included in the *pro se* Petition which respondent addressed in his Response, but which petitioner has not supported with any briefing.  The court deems these claims abandoned.  Cf. Doty v. County of Lassen, 37 F.3d 540, 548 (9th Cir. 1994)("[t]he failure to brief [an] issue waives [the appellant's] right to appeal" it).

///

4 - FINDINGS AND RECOMMENDATION

II.  **Procedural Default**.

In his Reply to petitioner's Memorandum in Support (#84), respondent contends that petitioner failed to fairly present Ground Six, the Sixth Amendment right to counsel claim, to the state courts and that it is now procedurally defaulted.

A.   **Waiver of the Procedural Default Defense:  Standards**.

"Under the Federal Rules of Civil Procedure, a party, with limited exceptions, is required to raise every defense in its first responsive pleading, and defenses not so raised are deemed waived." Morrison v. Mahoney, 399 F.3d 1042, 1046 (9th Cir. 2005)(citing Fed.R.Civ.P. 8©); Fed.R.Civ.P. 12(b); Fed.R.Civ.P. 12(g)).  The Federal Rules of Civil Procedure apply to habeas cases to the extent that they are not inconsistent with the Habeas Rules.  Id; Fed.R.Civ.P. 11; 28 U.S.C. § 2254.

Procedural default is an affirmative defense and should be raised in the first responsive pleading in order to avoid waiver. Morrison, 399 F.3d at 1046 (citing Vang v. Nevada, 329 F.3d 1069, 1073 (9th Cir. 2003)).

B.  **Analysis**.

In respondent's Response to Petitioner's Habeas Petition (#22), he specifically identified Grounds One, Four, Five, and Seven as being procedurally defaulted.  In contrast, respondent briefed the merits of Ground Six, referring to it as the "remaining" "non-defaulted" claim.  Response to Habeas Corpus Petition (#22),

pp. 11-15.  Accordingly, the court finds that respondent waived the procedural default defense as to Ground Six in his response to petitioner's habeas Petition, and thus, pursuant to <u>Morrison</u>, he cannot revive this defense in his Reply to petitioner's Memorandum in Support.  Given respondent's waiver of the procedural default defense as to Ground Six, the court will address the merits of this claim.

**III.  <u>The Merits</u>.**

      **A.  <u>Standard of Review</u>.**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's findings of fact are presumed correct and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court

and nevertheless arrives at a result different from [that] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. Id at 410. The state court's application of clearly established law must be objectively unreasonable. Id at 409.

**B.    Sixth Amendment Right to Counsel**.

In Ground Six, petitioner alleges that he was denied his Sixth Amendment right to counsel when the trial court denied his requests for substitution of counsel and forced him to proceed *pro se* in his jury trial. Specifically, petitioner contends that: (1) he did not voluntarily, knowingly, intelligently, and unequivocally waive his right to the assistance of counsel; and (2) the trial court failed to conduct an appropriate hearing regarding his motion for appointment of substitute counsel.

**1.    Right to waive assistance of counsel**.

Petitioner contends that he opted to represent himself only upon the trial court's flat denial of his request for the appointment of new counsel. Accordingly, petitioner argues, his reluctant agreement to represent himself at trial was insufficient

to constitute a valid waiver of his constitutional right to the assistance of counsel.

With certain exceptions, a criminal defendant has the constitutional right to represent himself. See Faretta v. California, 422 U.S. 806, 818 (1975). However, for a defendant to waive the right to assistance of counsel he "must 'knowingly and intelligently' forgo those relinquished benefits." Id at 835 (quoting Johnson v. Zerbst, 304 U.S. 458, 464-65 (1938)). In addition, "[a] criminal defendant's assertion of his right to self-representation must be timely and not for purposes of delay; it must also be unequivocal, as well as voluntary and intelligent." U.S. v. Hernandez, 203 F.3d 614, 620 (9th Cir. 2000)(citing Adams v. Carroll, 875 F.2d 1441, 1442 (9th Cir. 1989); U.S. v. Schaff, 948 F.2d 501, 503 (9th Cir. 1991); Godinez v. Moran, 509 U.S. 389, 400-02, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993)). "'A defendant must make an explicit choice between exercising the right to counsel and the right to self-representation so that a court may be reasonably certain that the defendant wishes to represent himself.'" United States v. Hernandez, 203 F.3d 614, 621 (9th Cir. 2000)(quoting United States v. Arlt, 41 F.3d 516, 519 (9th Cir. 1994)).

## a.  **Unequivocal waiver**.

In this case, the parties appeared before the presiding judge on March 15, 1996 on petitioner's motion to substitute new counsel

for Jeffrey Murdock.   Transcript (3/15/96) Motion to Withdraw,
p. 2.   This was not petitioner's first hearing involving the
removal of appointed counsel.   At least four court-appointed
attorneys represented petitioner during the pendency of his cases.

First, John M. Halpern was appointed to represent petitioner
in June 2005.   Shortly thereafter, Mr. Halpern was permitted to
withdraw due to a conflict of interest.   Memorandum in Support
(#81) Exhibit B, pp. 2-3; Respondent's Exhibit 118, pp. 7-8.   Next,
Daniel H. Koenig was appointed to represent petitioner.   He too was
permitted to withdraw with a warning that petitioner would be
granted one final appointment.   Memorandum in Support (#81) Exhibit
B, p. 3.   In his affidavit in support of the motion to withdraw,
Mr. Koenig indicated that his request to withdraw was based on
petitioner's view that Mr. Koenig was not giving his case adequate
attention.   Transcript (3/15/96) Motion to Withdraw, p. 3.   Clayton
Joseph Lance was then appointed to represent petitioner.   The trial
court permitted him to withdraw on petitioner's insistence that he
wanted to hire his own attorney.   At that time, a note was placed
in petitioner's file indicating that his case would proceed to
trial at the next scheduled trial date regardless of whether
petitioner had retained counsel.   Memorandum in Support (#81)
Exhibit B, p. 4, 5.   Mr. Lance stated in his affidavit in support
of his motion to withdraw that "[petitioner] has fired me; I no
longer have a working relationship with [him].   [He] believes I am

9 - FINDINGS AND RECOMMENDATION

dishonest and in the pocket of the district attorney's office because I am running for district attorney in 1996." Transcript (3/15/96) Motion to Withdraw, pp. 4-6.

Thereafter, notwithstanding petitioner's failure to retain his own counsel and the trial court's apparent resolve to deny further requests for appointment of counsel, Jeffrey Murdock was appointed to represent petitioner following his assault indictment. Memorandum in Support (#81) Exhibit B, p. 5. Mr. Murdock proceeded to represent petitioner in all three of his cases for several months before petitioner moved for the appointment of substitute counsel shortly before trial. In his motion, petitioner questioned Mr. Murdock's honesty citing an agreement between Mr. Murdock and the district attorney to consolidate his cases without petitioner's knowledge and against his best interests. Transcript (3/15/96) Motion to Withdraw, pp. 5-6.

Upon the judge's review of petitioner's history with prior appointed counsel, and upon hearing from petitioner, petitioner's counsel, and the assistant district attorney, the judge denied petitioner's motion for the appointment of substitute counsel, indicating that petitioner could choose to keep his current attorney (Mr. Murdock), hire his own attorney, or represent himself, but that "[he was] not getting another court-appointed attorney." Id at 8. When pressed for a decision as to how he wished to proceed, petitioner responded "I'll go without an

10 - FINDINGS AND RECOMMENDATION

attorney, I guess." Id. Following this exchange, and at the suggestion of the assistant district attorney, the judge set the matter over for five days to give petitioner time to think over his decision. Id at 9.

When the parties reconvened on March 20, 1996, petitioner reported to the judge that he wished "to execute his rights to represent [him]self in this matter." Transcript (3/20/96) Motion to Withdraw, p. 3. The court then engaged in a lengthy colloquy with petitioner, informing him of the disadvantages of self-representation, apprising him of the charges and potential punishment, and explaining to him the potential consequences of his decision as he prepared for trial. The judge methodically recited the government's charges against petitioner, including their classifications, and potential maximum penalties and fines. The judge stated:

> Given the nature of these offenses and the possible consequences if convicted of any or a number or all of these offenses, Mr. Lonewolf, I do not feel that your legal rights and your best interests would be served by allowing or relieving Mr. Murdock in this case. I'm concerned that you [in] attempting to represent yourself on these matters would substantially prejudice your rights and your ability to fairly present any defenses you may have to these charges and/or represent your interests and present information on your behalf should you be found guilty.

Id. at 5-7.

Despite the judge's comprehensive warnings, petitioner asked the court to "honor [his] constitutional right to face [his]

11 - FINDINGS AND RECOMMENDATION

accusers and represent [himself] in this court of law." Id at 8.
The judge granted his request to proceed *pro se* and appointed Mr.
Murdock to act as petitioner's legal advisor at trial.

Notwithstanding petitioner's requests that he be allowed to
exercise his constitutional right to represent himself, he now
argues that by denying his motion for appointment of substitute
counsel, the trial court forced him to choose between two
unacceptable options: (1) representing himself; or (2) continuing
with Mr. Murdock, whom petitioner summarily contends was
incompetent. Petitioner argues that his grudging agreement to
proceed *pro se* did not constitute an unequivocal waiver of his
right to counsel. However, on similar facts, the Ninth Circuit
held that "[t]he fact that [defendant]'s request may have been
conditional-- that is, the fact that he requested to represent
himself only because the court was unwilling to grant his request
for new counsel--is not evidence that the request was equivocal."
Hernandez, 203 F.3d at 621-22. Here too, the fact that petitioner
agreed to represent himself only upon the court's refusal to
appoint him new counsel, is not evidence that his waiver of his
right to counsel was equivocal.

Moreover, petitioner's reliance on Crandell v. Bunnell, 144
F.3d 1213 (9th Cir. 1998) is misplaced. There, the court held that
a defendant cannot be made to choose between incompetent counsel
and representing himself. Significantly, that court's holding

rests on its express finding that the defendant's attorney was incompetent under Strickland v. Washington, 466 U.S. 668 (1984). Id at 1216. No finding of incompetence has been made in this case and petitioner makes no attempt to analyze Mr. Murdock's representation of petitioner under the Strickland standards. Petitioner's complaints focus primarily on the quality of his relationship with counsel, rather than on counsel's effectiveness and competency. Memorandum in Support (#81), pp. 17-18.

Furthermore, there is no indication in the record here that petitioner's request to represent himself was "an emotional outburst, or anything other than a sincere and unambiguous request." See Hernandez, 203 F.3d at 621. This finding is buttressed by the fact that the court gave petitioner five days in which to think over his decision to represent himself, and upon reflection, petitioner emphatically renewed his request to represent himself. Transcript (3/20/96) Motion to Withdraw, pp. 5-8.

Finally, the Ninth Circuit requires the court to make defendant "aware of the 'three elements' of self-representation: he must be 'made aware of (1) the nature of the charges against him; (2) the possible penalties; and (3) the dangers and disadvantages of self-representation." Hernandez, 203 F.3d at 623-34 (quoting United States v. Farland, 190 F.3d 1097, 1099 (9th

Cir. 1999)).  As detailed above, the court thoroughly apprised petitioner of these requisite elements of self-representation.

**b.  <u>Knowing and voluntary:  petitioner's competency to waive his right to counsel</u>.**

Petitioner additionally contends that the trial court had good reason to question his competency to stand trial, and therefore, any waiver of his right to counsel must have been made involuntarily.

A defendant must be competent in order to waive his constitutional right to counsel.  The Supreme Court has held that a defendant's competence to waive the right to counsel is measured by the same standard under which competence to stand trial is evaluated.  <u>See</u> <u>Godinez v. Moran</u>, 509 U.S. 389, 397-400 (1993). The standard for competence to stand trial requires nothing more than that a defendant have some minimal understanding of the proceedings against him.  <u>Id</u> at 396.

A trial judge must *sua sponte* conduct an evidentiary hearing to inquire into a defendant's competence to stand trial only when "the evidence raises a 'bona fide doubt'" as to defendant's competence.  <u>Pate v. Robinson</u>, 383 U.S. 375 (1966).  In <u>Pate</u>, the Court was faced with a defendant who, among other things, had had a brick dropped on his head when he was young, often stood "in a daze," and, according to his mother, "lost his mind."  <u>Id</u> at 378-79; <u>see also</u> <u>Odle v. Woodford</u>, 238 F.3d 1084, 1089-90 (9th Cir. 2001)(holding that it was error not to conduct a competency hearing

where petitioner suffered severe trauma to his brain as a result of
a car accident and had a 3 x 3 x 4-inch piece of brain removed, and
had a long subsequent history of psychiatric hospitalization and
bizarre behavior); Torres v. Prunty, 223 F.3d 1103, 1105 (9th Cir.
2000)(concluding that district court erred by not holding a
competency hearing where court-appointed psychiatrist had diagnosed
the petitioner as having severe delusional (paranoid) disorder,
testing indicated that the petitioner had brain damage resulting
from head trauma, and petitioner had disruptive outbursts in
court). Davis v. Woodford, 384 F.3d 628, 646 (9th Cir. 2004).

     The trial judge here had a duty to conduct a competency
hearing *sua sponte* if he doubted petitioner's competency to stand
trial.  The judge had no such reservations.  Upon his initial
consideration of petitioner's motion for a psychological evaluation
which was filed during the trial, the judge denied the motion
stating "he had no reason to doubt Mr. Lonewolf's fitness to
proceed in this matter."  Transcript (4/30/96) Volume II, p. 195.

     Nevertheless, at petitioner's request and in what amounted to
an informal competency hearing, the court allowed petitioner to
call his legal advisor, Mr. Murdock, as a witness in support of his
motion for a psychological evaluation.  Mr. Murdock testified that
in his opinion, petitioner was paranoid, out of touch with reality,
and taking self-destructive action by representing himself.  He
also testified that petitioner had resisted his recommendation that

he undergo psychological testing.  Mr. Murdock gave the following examples of why he thought petitioner was out of touch with reality:  (1) petitioner's desire to subpoena Judges Ann Aiken and Michael Hogan; (2) petitioner's belief that Mr. Murdock and the assistant district attorney had conspired to get set-overs in his case; and (3) petitioner's belief that he was acting as an undercover agent for the state at the times of his alleged crimes. Mr. Murdock testified that petitioner is "making really bad decisions, doesn't seem to understand the nature of the evidence against him even though it's been explained over and over." Transcript (4/30/96) Volume II, p. 204.  Mr. Murdock also testified that "according to [petitioner's] wife, he had a history of mental illness or post-traumatic issues or at some point either he or his wife told me he had been a prisoner of war and was severely affected by post-traumatic stress issues associated with that." Id at 205.

        The court also heard from the petitioner who testified that: (1) he had episodes of "spiritual contact" and hallucinations; (2) the holy spirit moved him to ask the court to have him extinguished; (3) he was under extreme duress and thought people were watching him; (4) he questioned his decisions; (5) he believed he was working for the government as an undercover agent; and (6) Dr. Cohn had been treating him and prescribing him medications

since 1993. Petitioner testified that all of these things made him think that he was not making right decisions. _Id_.

Having considered Mr. Murdock's and petitioner's testimony, the trial judge renewed his denial of petitioner's motion for a psychological evaluation finding no basis for granting it under Oregon law. _Id_.

In contrast to the substantial evidence of incompetency available in _Pate_, the trial court here had only the testimony of Mr. Murdock (petitioner's former attorney and current legal advisor), and the self-serving testimony of petitioner himself. The court finds that the evidence before the trial court failed to present the same overwhelming indications of incompetence present in _Pate_, _Ogle_ or _Torres_.

To the extent that petitioner believes that a psychological evaluation was necessary to assist the trial court in determining petitioner's competency to stand trial, the court finds that given the controlling law and facts before the trial court, its decision to deny petitioner's motion for a psychological evaluation was neither contrary to, nor an unreasonable application of clearly established federal law.

For the foregoing reasons, the trial court's conclusions that petitioner voluntarily, intelligently, and unequivocally waived his Sixth Amendment right to counsel, and that he was competent to do

so, are neither contrary to, nor based on an unreasonable application of clearly established federal law.

## 2.  Adequate inquiry into petitioner's motion for substitute counsel.

Next, petitioner contends that his relationship with his attorney, Mr. Murdock, had deteriorated significantly, and that the court violated his Constitutional right to counsel when it failed to make appropriate inquiries into the conflict between them when petitioner moved to substitute counsel.

### a.  Standards.

The Sixth Amendment to the Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  However, the Supreme Court has held that there is no Sixth Amendment right to a "meaningful relationship" between an accused and his counsel. Morris v. Slappy, 461 U.S. 1, 14 (1983).  Criminal defendants are entitled only to "adequate counsel" under the Sixth Amendment; if they can show that their appointed counsel are ineffective, they can pursue remedies under Strickland v. Washington.  See Caplin & Drysdale, Chartered v. U.S., 491 U.S. 617, 624 & 630 (1989).

In addition, the Ninth Circuit has held that "where a court 'compel[s] one charged with [a] grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in [an] irreconcilable conflict [it] deprive[s] him of

the effective assistance of any counsel whatsoever.'" _Daniels v._
_Woodford_, 428 F.3d 1181, 1197 (9th Cir. 2005)(quoting _Brown v._
_Craven_, 424 F.2d 1166, 1170 (9th Cir. 1970)).   The Ninth Circuit
has also held that "the Sixth Amendment requires on the record an
_appropriate inquiry_ into the grounds for [a motion for new
counsel], and that the matter be resolved on the merits before the
case goes forward." _Schell v. Witek_, 218 F.3d 1017, 1025 (9th Cir.
2000)(citing _Smith v. Lockhart_, 923 F.2d 1314, 1320 (8th Cir.
1991))(emphasis added).

### b.  **Analysis**.

As summarized above, the Supreme Court has never held that a
hearing to inquire into the relationship between a defendant and
his attorney is necessary to dispose of a motion for the
appointment of new counsel.  Rather, the Court has indicated that
so long as a defendant's counsel is "adequate" measured under
_Strickland_, he has no cognizable Sixth Amendment right to counsel
claim.

However, even applying a heightened "inquiry" requirement set
forth by the Ninth Circuit, the court finds that the trial court
here adequately addressed the grounds for petitioner's motion to
substitute counsel.  Therefore, under Ninth Circuit standards, the
trial court did not violate petitioner's Sixth Amendment right to
counsel.

Notwithstanding petitioner's claim to the contrary, the trial court did consider the alleged conflict between petitioner and counsel. At the initial hearing on petitioner's motion to substitute Mr. Murdock, plaintiff complained that counsel never informed him that his three cases had been consolidated, and that counsel had not represented him truthfully, evidenced by his agreement with the district attorney to combine petitioner's cases without his approval and against his best interests. Transcript (3/15/96) Motion to Withdraw, pp. 4-5. In response, counsel stated that: (1) he was surprised by petitioner's motion; (2) he had been representing petitioner for 5-6 months and was unaware of any problems; (3) he believed that they had reported ready to proceed to trial at the last appearance; (4) he had requested and obtained investigative orders for each of petitioner's three cases; (5) he had communicated with petitioner on the phone and through an investigator who visited petitioner in jail; and (6) he had not found petitioner unmanageable. Id.

Having considered petitioner and counsel's respective positions, the judge refused to provide petitioner with yet another court-appointed attorney, noting that petitioner's request to substitute counsel was similar to a prior request to obtain new court-appointed counsel and that his reasons for asking for Mr.

Murdock's removal did not equate with the actual representation he received.[2]   Transcript (3/20/96) Motion to Withdraw, p. 2

Thereafter, prior to jury selection, petitioner renewed his request for the appointment of new counsel after learning that Mr. Murdock had been released from a drug treatment center.  Petitioner stated that he felt counsel had violated his trust by not disclosing the fact that he was being treated for drug or alcohol dependence, and that a person in treatment was not fit to make decisions and function as a lawyer.  Counsel disagreed.  He stated that his treatment never resulted in a postponement of petitioner's case, nor did it complicate his representation of petitioner. Transcript Volume I, p. 133.

In its consideration of petitioner's motion, the court made the following observations:

> Mr. Murdock has appeared in my court on numerous occasions as an attorney for criminal defendants.  I have found his ethics and I have found his work to be exemplary on behalf of all of his clients.  I have no criticism of Mr. Murdock whatsoever.

> The mere fact he had an illness that he needed to seek treatment for in my view, whether it be drugs, alcohol or appendicitis if a person goes and gets treatment it should not affect their profession.  I have seen

---

[2]      In December 1995, prior to Mr. Murdock's appointment, petitioner complained generally about court-appointed attorneys stating that they all wanted him to plead guilty.  He stated that he did not want one in his assault case because "they have given me about 13 and none of them have [sic] been appropriate..."

    absolutely no -- zero -- indication whatsoever, nor has
    it been called to my attention by any other judge in this
    court, that Mr. Murdock's ability to represent any client
    or his ability to work on the felony list has been in any
    way impaired and we review the felony list each year as
    a total court.

Id at 134.

The judge then denied petitioner's requests for appointment of new

counsel and to remove Mr. Murdock as his legal advisor stating "I

find Mr. Murdock to be a competent and ethical attorney." Id at

135.  Though petitioner references the fact that Mr. Murdock was

later disbarred for professional misconduct, he fails to show how

the reasons for such disbarment actually impacted the quality of

counsel's representation of petitioner here.  The trial court, on

notice of counsel's recent struggles, scrutinized his performance

representing petitioner and found it adequate.  Accordingly, the

court  finds  that  the  trial  court  appropriately  addressed

petitioner's motions to substitute counsel, and that its decisions

to deny such motions were neither contrary to nor an unreasonable

application of clearly established federal law.

<u>**RECOMMENDATION**</u>

_____For the reasons identified above, the Petition for Writ of

Habeas Corpus (#1) should be DENIED, and judgment should be entered

DISMISSING this case with prejudice.

///

    22 - FINDINGS AND RECOMMENDATION

### SCHEDULING ORDER

_____This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.  The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections.  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issue, and will constitute a waiver of a party's right to appellate review of the findings of fact in order of judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this  9th  day of August, 2006.


                          /s/ John Jelderks
                    John Jelderks
                    United States Magistrate Judge




23 - FINDINGS AND RECOMMENDATION